## STATE v. BUNDY.

1. In order to make out the defence of insanity to the charge of murder, there must be sufficient proof to overcome by the preponderance of evidence, the presumption of sanity and any other proof by the State upon this issue, so as to show a want of sanity with reasonable certainty; this degree of evidence on the part of the defendant satisfies the requirement that the State must establish every element of the crime charged "beyond a reasonable doubt."

2. The evidence in this case does not prove that the defendant was in a state of temporary intoxication when he committed the crime; but if it did, this would not be a defence, as voluntary drunkenness of whatever degree is no excuse for crime committed under its influence.

3. The difficulty is great, if not insuperable, of establishing by satisfactory proof whether an impulse was or was not uncontrollable. But there was nothing in this case requiring the Circuit Judge to enter upon this subject.

4. The Circuit Judge correctly charged the jury as follows: "In order to relieve himself from responsibility for a criminal act by reason of mental unsoundness, the prisoner must show that he was under a mental delusion by reason of mental disease and that at the time of the act he did *not know* that the act he committed was wrong, or criminal, or punishable, either the one or the other. Because, notwithstanding his mind may be diseased, if he is still capable of forming a correct judgment as to the nature of the act as to its being morally or legally wrong, he is still responsible for his act and punishable as if no mental disease existed at all."

Before WALLACE, J., Spartanburg, June, 1885.

The opinion fully states the case.

*Mr. Stanyarne Wilson,* for appellant.

*Mr. Solicitor Duncan,* contra.

March 23, 1886.  The opinion of the court was delivered by

MR. JUSTICE McGOWAN.  The defendant, Edward Bundy, was indicted for the murder of Annie Heckman, at Spartanburg, on March 5, 1885.  The facts do not appear in the brief, but we infer from the charge of the judge, which is reported in full, and from the exceptions, that no question was made as to the fact of killing, and that the only defence was that the defendant, when he committed the act, was *non compos mentis* and not criminally responsible.  It is stated that there was evidence that the defendant had some liquor on the evening of the homicide, which occurred about half-past 8 o'clock at night, but there was no evidence whatever of any previous habit of gross intemperance of the defendant or consequences affecting his health or mind resulting therefrom.  It is also stated that soon after the killing the defendant made efforts to take his own life.

The jury rendered a verdict of guilty and the defendant was sentenced to be executed August 7, 1886.  From this sentence the defendant appeals, on the following grounds:

Because his honor erred in charging:

1. "That the presumption that a man is sane is a presumption of the truth of the fact beyond a reasonable doubt.

2. "That in order for a defendant to relieve himself from responsibility for a criminal act by reason of mental unsoundness, he must show that he was under a mental delusion by reason of mental disease, and that at the time of the act he did not know that the act he committed was wrong, or criminal, or punishable, either the one or the other.

3. "That when a man is charged with crime, the fact that he was drunk at the time of its commission does not discharge him from the responsibility of a sober man.

4. "That if by insulting words or abusive epithets a man is

thrown into a tumult of excitement, and sudden heat and passion induced by such a cause, and human life is taken, that is not manslaughter; that is murder.

5. "That the law requires a defendant to establish that he was insane by the preponderance of the testimony."

Because his honor refused the defendant's requests to charge :

6. "That if upon the whole evidence the jury believe that the accused at the time of the act was under the influence of a mind diseased, either intellectually or morally, and was unconscious that he was committing a crime, he should be acquitted.

7. "That if the jury are satisfied from the evidence that at the time of the act the prisoner was laboring under mental derangement, whether partial or general, of a degree sufficient to have controlled his will and to have taken from him freedom of action, the verdict of the jury should be 'not guilty.'

8. "That if by reason of mental derangement at the time of the act the prisoner had not power to control the disposition or impulse to commit the deed, he should be acquitted.

9. "That if the jury believe that there was an attempt of the defendant to kill himself soon after the commission of the act, this is a fact that should be considered in weighing the evidence as to insanity.

10. "That intoxication can be looked to in determining whether the killing was done with premeditation and deliberation. If the jury believe that at the time of the act he was by reason of intoxication or any other cause in such a condition as to render him incapable of a deliberate and premeditated purpose, they should find him guilty of manslaughter.

11. "That drunkenness is not an excuse for crime; but as in all cases where a jury find a defendant guilty of homicide, it becomes necessary for them to inquire as to the state of mind under which he acted, and in the prosecution of such an inquiry his condition, as drunk or sober, is proper to be considered. The degree of the offence depends entirely upon the question whether the killing was wilful, deliberate, and premeditated; and upon that question it is proper for the jury to consider evidence of intoxication, if such there be, not upon the ground that drunkenness renders a criminal act less criminal or can be received in

extenuation or excuse, but upon the ground that the condition of the defendant's mind at the time the act was committed must be inquired after in order to justly determine the question as to whether his mind was capable of that deliberation or premeditation which, according as they were present or absent, determine whether the killing was murder or manslaughter.

12. "That if the jury believe that the purpose to take life had its inception and was carried into effect while the defendant was in a state of mental confusion, whether from drink or other cause, which rendered him incapable of calm reflection or of forming a deliberate design to take life, the offence committed cannot be murder."

Exceptions 1 and 5 allege that the judge committed error in charging that the presumption that a man is sane is a presumption of the truth of the fact beyond all reasonable doubt, and the law requires a defendant to establish that he was insane by the preponderance of testimony. It is argued that when the prisoner's sanity is questioned and put "in issue" by him, the State must establish sanity, like any other fact, "beyond all reasonable doubt." When crime is charged, it must of course be proved, for the double reason that every man is presumed to be innocent and he who alleges must prove. In criminal proceedings, which touch the life or liberty of the citizen, this rule is so exacting as to require the proof to be clear "beyond a reasonable doubt," otherwise it is considered better that the accused should escape. There is no doubt that an indictment for murder substantially alleges not only the fact of homicide, but also a criminal intent, which pre-supposes reason.

But as the usual condition of men is that of sanity, there is a presumption that the accused is sane, which certainly in the first instance affords proof of the fact. *State* v. *Coleman*, 20 *S. C.*, 454. If the killing and nothing more appears, this presumption, without other proof upon the point of sanity, is sufficient to support a conviction, and, as the State must prove every element of the crime charged "beyond a reasonable doubt," it follows that this presumption affords such proof. This presumption, however, may be overthrown. It may be shown on the part of the accused that the criminal intent did not exist at the time the act was com-

mitted. This being exceptional is a defence, and, like other defences, must be made out by the party claiming the benefit of it. "The positive existence of that degree and kind of insanity that shall work a dispensation to the prisoner in a case of established homicide, is a fact to be proved as it is affirmed by him." *State* v. *Stark*, 1 *Strob.*, 506.

What, then, is necessary to make out this defence? It surely cannot be sufficient merely to allege insanity to put his sanity "in issue." That is merely a pleading, a denial, and ineffectual without proof. In order to make out such defence, as it seems to us, sufficient proof must be shown to overcome in the first place the presumption of sanity and then any other proof that may be offered. This need not be done "beyond a reasonable doubt," for that would be a misapplication of the rule, which only applies to the evidence to sustain the charge on the part of the State, but by "the preponderance of evidence," showing want of sanity with reasonable certainty ; this degree of evidence on the part of the defendant answering to and satisfying the requirement that the State must establish every element of the crime charged "beyond a reasonable doubt." "Where the State fully proves a *prima facie* case, and a special defence, such as insanity, alibi, &c., is interposed, it must be established only by such a preponderance of evidence as will satisfy the jury that the charge is not sustained 'beyond all reasonable doubt.' " *State* v. *Paulk*, 18 *S. C.*, 515 ; *Lawson's Insanity*, 418.

Exceptions 3, 10, 11, and 12 complain that it was error in the judge to charge that voluntary drunkenness is no excuse for crime in the sense that the jury, in considering the question of malice, may not look to the unnaturally excited condition of the mind produced by temporary intoxication. We do not see that the facts of this case as stated can be considered as properly raising the question as to the effect of drunkenness in one who commits a homicide under its influence. There was no effort to prove any permanent disease of the mind resulting from long habits of gross intemperance, nor even a temporary fit of drunkenness at the time the act was committed. The only proof upon the subject, as stated, being that the prisoner had "some liquor" during the evening before the homicide was committed.

But if that meagre proof is regarded as sufficient to raise the question, and the prisoner must be assumed to have been in a state of temporary intoxication when he committed the homicide, that would not excuse the crime. We do not think that our case of *State* v. *McCants* (1 *Speer*, 393) holds peculiar doctrines on this subject. Some cases may be found which suggest limitations of the rule, especially as to reducing murder to manslaughter by the indulgence extended to the natural weakness of "sudden heat and passion." But we think that the broad current of modern opinion holds the wise old doctrine that voluntary drunkenness of whatever degree is no excuse for crime committed under its influence. Any other principle would be destructive to the peace and order of society. Every murderer would soak himself in liquor for the double purpose of nerving himself for the act and of sheltering his intended crime. Sir Matthew Hale, . in his "History of the Pleas of the Crown," says: "The third kind of *dementia* is that which is *dementia affectata*, namely, drunkenness. This vice doth deprive men of the use of reason, and puts many more into a perfect but temporary phrenzy. But by the laws of England such a person shall have no privilege by his voluntarily contracted madness."

Exceptions 2, 6, 7, and 8 complain that the judge erred in not charging that, as insanity is a disease of the intellectual or moral faculties, one or both, the test of criminality was not whether the party had knowledge of right and wrong, but whether he had the power to refrain from doing what was known to be wrong. As was said in the case of *State* v. *Stark*, *supra*, the subject of the mind and its influence upon the body is very difficult and obscure even to the most learned. The books of medical jurisprudence contain much controversy as to what infirmities of the mind should exempt from criminality. Since the famous cases of *Hatfield*, who under an insane delusion shot at the king, and of *McNaghten* for killing Mr. Drummond by mistake for Sir Robert Peel, these discussions for the most part have been directed towards what has been called insane delusion, moral insanity, or uncontrollable impulse. (See chapter 19 of Sir James Stephen's History of the Criminal Law.) On a subject so intangible and of which so little can be clearly known we would not, in the

spirit of dogmatism, undertake to say that there was no moral as distinguished from intellectual insanity. It seems to us, however, that in the view suggested the difficulty would be great, if not insuperable, of establishing by satisfactory proof whether an impulse was or was not "uncontrollable."

But we see nothing in this case which required the Circuit Judge to enter upon the subject. As he stated, he was not called upon to charge abstract propositions that the evidence did not make necessary. "It is only proper that I should charge you in regard to such legal principles as arise out of the evidence." As applicable to the facts of the case, he instructed the jury as follows: "In order to relieve himself from responsibility for a criminal act by reason of mental unsoundness, he (the prisoner) must show that he was under a mental delusion by reason of mental disease, and that at the time of the act he did *not know* that the act he committed was wrong, or criminal, or punishable, either the one or the other. Because, notwithstanding his mind may be diseased, if he is still capable of forming a correct judgment as to the nature of the act, as to its being morally or legally wrong, he is still responsible for his act and punishable as if no mental disease existed at all."

We cannot say that this was error of law. The test here given to the jury was, as we understand it, the ordinary test in such cases; the test authorized by the opinion of all the judges of England in answer to the questions of the House of Lords growing out of *McNaghten's Case*; the test applied in the case of the *United States* v. *Guiteau* for shooting President Garfield, and in many other cases in most of the States. See Lawson on Insanity as a Defence to Crime, 270, and following pages.

The judgment of this court is, that the judgment of the Circuit Court be affirmed, and that the case be remanded to the Circuit Court for the purpose of enabling that court to assign a new day for the execution of the sentence before imposed.