## BRICE v. MILLER.

1. CAUSE OF ACTION—MARRIED WOMAN.—A complaint cannot be held not to state facts sufficient to constitute a cause of action because of its failure to allege that the contract sued upon was made by defendant with reference to her separate estate, defendant's coverture not appearing on the face of the complaint.

2. EVIDENCE—PERSON DECEASED.—In action against a married woman, on her promissory notes, the issue was whether the defendant had purchased the property on the consideration of her promise to pay the debt for which her notes were given. The plaintiff was permitted to testify that defendant's grantor, now deceased, had "fixed the property so they could pay the debt," the trial judge ruling that the witness was merely speaking of a change of possession. *Held,* that defendant had no ground of complaint, for the testimony related to no transaction or communication between the witness and the deceased.

3. IBID.—Objection to a mere repetition of testimony which was received in the first instance without objection, comes too late.

4. IBID.—PERSON DECEASED.—A party in interest may testify to a communication or transaction between a person deceased and a third person.

5. IBID.—It was not error to permit a witness to testify that certain persons had gone to the home of defendant's grantor, the purpose of such visit not being proved when objected to by defendant.

6. IBID—AN ALIENEE of land does not seem to be an assignee within the meaning of section 400 of the Code. *Cantey* v. *Whitaker*, 17 S. C., 527.

7. EVIDENCE to show the real consideration of a transfer of property does, not vary the terms of the written instrument by which the transfer was made, and is admissible.

8. MARRIED WOMAN.—EVIDENCE is admissible to show that the real consideration of a deed of conveyance was the promise by the grantee, a married woman, to pay a debt, which promise thereby became a contract with reference to her separate estate. The effect of such evidence was not to establish a trust by parol.

9. STENOGRAPHER.—EVIDENCE is admissible to prove what a party to the action had said at a former trial as to the subject-matter of controversy, and such proof may be made by any one who heard the statement. The written notes of the court stenographer are not, as matter of law, the best evidence of what was testified to at a former trial, in such sense as to exclude other testimony.

10. EVIDENCE.—It is left largely to the trial judge to determine whether testimony is relevant and what is admissible in reply; and in this case his discretion was not abused.

11. ESTOPPEL.—Where plaintiff claimed that defendant, a married woman, received real and personal property from another on the express consideration that she would pay a debt due to plaintiff, and defendant denied that the personal property was transferred to her at all, there was no error on the part of the trial judge in charging the jury that defendant was estopped from denying that she owned the property which she had mortgaged to plaintiff as her own.

12. CHARGE ON FACTS.—The charge in this case did not indicate to the jury the judge's opinion as to the facts, except upon a matter immaterial to the issues, and therefore was not a charge on the facts within the meaning of the constitution.

Before KERSHAW, J., Fairfield, February, 1891.

Action by Calvin Brice & Co. against Elizabeth Miller. The charge to the jury was as follows:

This action is founded upon two notes; notes which the defendant here, Mrs. Elizabeth Miller, does not deny that she made. She made those notes, together with the mortgages of which they are a part, and delivered them to Brice & Co., who are the plaintiffs here. In the case of a man, that would be the end of it; but in the case of a married woman, it is necessary to go further than that, because a married woman has but a limited power to contract. A married woman may make many notes without being bound by them, unless they are made with reference to her separate estate; and that grows out of the fact that the constitution now in force—the constitution adopted about 1867 or '68—changes our law with reference to the powers of married women. Before that time, as some of you who lived before that time can probably recall, a married woman could not make a contract like this in the ordinary run of business; the property that she had became, by marriage, the property of her husband, and even where she had a separate estate, she could only charge the especial estate in some way which the Court of Equity would recognize. But she had not the power of contracting generally, as a single woman would have, or a single man.

That constitution declared that the property of a married woman which she then owned, or which she acquired after her marriage, during the life of her husband, should constitute her separate estate; so after that constitution was adopted, whatever

property a married woman had was her separate estate, which could not be charged by her husband's contracts; but she was allowed herself by her contracts with relation to it, to bind her separate estate, and her contracts made that way could be enforced in a court of justice; but if they were not made with regard to her separate estate, then they had no validity. So, where you prove a note made by a married woman it is not enough, but you must go further and show that that note was made with reference to her separate estate, and if she incurred the obligation with reference to her separate estate, it became binding as in other cases.

So, if you find that she made these notes and mortgage, your next important inquiry will be whether the transaction was one that had relation to her separate property. Well now, if as is contended by counsel for the plaintiff, this was in effect a purchase of property by this good lady, and that was the nature of the transaction, then she could obligate herself to pay for the property which she bought or acquired, and which became by her purchase her separate property. Looking at the circumstances here, in the light of the testimony as it is said by witnesses here, there is evidence tending to show that there was a good old lady, a Mrs. Mary Miller, the mother of the defendant's husband, the old lady who owned all this property, and she determined at an advanced era in her life to go to Florida; but with a very great propriety on her part, she desired to settle her affairs before she went to Florida, that is, the testimony tends to show that. She didn't want to go away and leave her children to contend over her property; but she wanted to make some arrangement for an equitable division among her children before she left. That was one of the objects, which the testimony tends to show she had in view. Then there were some debts which she was anxious to pay. As has been said, she was not bound to pay the debts, but she was an old lady who was so conscientious that she desired to pay these debts. Otherwise there might be some legal proceedings which would throw her estate into confusion, and she wanted to settle all those things before she left. I think it was a prudent thing for her to do.

But any way, she made an arrangement which was satisfactory

to her creditors and satisfactory to the heirs of the estate. There was no dissatisfaction at that time. What was the arrangement? It was said by some of these witnesses that this personal pro-perty was left by her to pay this very debt; to provide for this very debt which the plaintiffs are suing for. It is true it was not her personal debt, and it is also true that if any person takes money or property and puts it anywhere for the benefit of the creditors, that is enough, without more; they can dedicate the property to that creditor, or they may dedicate money. Into whosoever's hands this money goes, it is pledged for the payment of the debt. Was this property dedicated by this old lady; left here to be applied, as much as was necessary, to the payment of this debt, or to be worked for the purpose of raising money to pay that debt? Did Mrs. Miller, the defendant in this case, take that property, knowing that it had been dedicated to this purpose? Why, if she took the property and got the benefit of the property, she held it upon condition only that she should comply with the conditions upon which it had been dedicated; and if Mrs. Miller, urged by her husband or anybody else, or without being urged, thought that she would get possession and control of this property, put it on her land which her mother had deeded to her, and in order to do that, she made this note and mortgage, why, then I think she is liable, and the plaintiffs ought to have a verdict, if that is the nature of this transaction.

Now, one more thing I would say: that wherever a person signs a mortgage—gives a note and signs a mortgage—and in that mortgage represents him or herself to be the owner of the property upon which they put the mortgage, then they are es-topped to deny it. If a man should act and pretend to be the owner of a piece of property and mortgage it, and then try to get out of paying it by saying the property was not his, he cannot do so. Estoppel is the principle of law that does not allow a man to state the truth, and a man is not allowed to state only the truth against his own debt.

It has been urged upon me to charge you, although it is a mat-ter rather of general and abstract law, that no man is allowed by word of mouth to contradict a written paper; that a man who has made a deed cannot put up a witness to show that the deed

.don't mean what it says; and another thing is when there is a record kept of a fact in writing made at the time, it is better evidence than the unaided recollection of any one. Now, as to this point about what this good lady, Mrs. Miller, testified to at the last court: Mr. Brice undertook to tell what he recollected about it, and it has been urged upon you that his recollection is not correct, and the record kept by the stenographer, a sworn officer of the court, was read in order to show that Mr. Brice did not recollect what the lady said at the last trial. In a point of that kind, you will go by what the stenographer took her down as saying at the time. It is more worthy of belief than the statement of the witness; the preponderance is in favor of what the stenographer took down at the time.

The plaintiff must satisfy you by the preponderance of the testimony that he is entitled to recover. If he does not so satisfy you, then the defendant is entitled to recover. You will find according to the preponderance of the evidence, whether in favor of plaintiff or defendant. We have the word of Mr. Brice as to what he remembers this lady to have said, and we have the written testimony of the stenographer as to what she said. It is man against man, but the preponderance is in favor of the stenographer's notes rather than the witness. That is what is meant by the preponderance of the evidence. All the evidence is to be weighed that way, and if the preponderance of the testimony is on the side of the plaintiff, then the plaintiff is entitled to your verdict, otherwise not, remembering, as I said, that you must be satisfied not beyond a reasonable doubt; the law does not require that in a civil court, but you must be satisfied, as a matter of belief by the preponderance of the testimony, first, that this lady, the defendant, Mrs. Elizabeth Miller, made these notes and mortgages; and, secondly, that she made them in relation to her separate estate; to acquire some benefit for her separate estate, or in some way to affect her separate estate. If you are satisfied of that, your verdict will be for the plaintiff. If not, your verdict will be for the defendant.

Here are some propositions of law that the defendants have asked me to charge: That a married woman is not authorized by law to make a contract whereby she becomes a trustee for benefit

of another's debt. That if Mrs. Mary Miller had undertaken to convey this personal property to the defendant in trust to pay the debt of the plaintiff, such contract would be void. Well, on the contrary, I charge you this: that if she took possession of that property, charged with the payment of this debt, took it as her own property, then she assumed by that the payment of the debt, and she could do that with the purchase money of the property. While, as a mere abstract proposition, a married woman could not be a trustee, yet if she took property belonging to some other person, she could not very well get out of the responsibility.

The 2nd request is that a married woman can be bound only on such contracts as appertain or relate to her separate estate, and that the burden of proof is on the plaintiff to show by preponderance of the evidence that the contract was made by the defendant in relation to her separate estate, for the benefit thereof, or in relation thereto. Well, that is the law as I have tried to explain it to you, and I charge it to you in the language of that request.

Verdict was for plaintiff, and defendant appealed on the following exceptions:

1. For that his honor should have sustained the oral demurrer of the defendant.

2. For that his honor erred in allowing the plaintiff, Mr. Brice, on redirect examination, to testify over the objection of counsel for defendant, as to the facts and circumstances under which the defendant, a married woman, executed the notes put in evidence.

3. For that his honor erred in permitting the plaintiff, over the objection of counsel for defendant, to testify that Mrs. Mary Miller had conveyed all of her property, both real and personal, to the defendant, coupled with a secret trust to pay his (plaintiff) debt, and that it was in pursuance of this arrangement that defendant, a married woman, executed these notes to pay her husband's store account, such testimony tending to vary a written instrument and being obnoxious to the statute of frauds, as tending to establish a trust in land by parol evidence.

4. For that his honor erred in permitting the plaintiff to testify that he went to see Mrs. Mary Miller about the debt, and

that she stated to him that it was a just and honorable debt and must be paid; and that she (Mrs. Mary Miller) then gave defendant the property, charging it with the payment of his debt, she, Mrs. Mary Miller, being then deceased.

5. For that his honor erred in permitting the plaintiff, over the repeated objections of counsel for defendant, to testify to transactions and communications with Mrs. Mary Miller, a person then deceased.

6. For that his honor erred in permitting the plaintiff to testify his recollection as to what the defendant said while testifying on a former trial of this cause, her testimony being in writing and preserved as the records of the court, and she being then in court and subject to examination by him.

7. For that his honor erred in permitting counsel for the plaintiff to ask him (the plaintiff), his own witness, the following questions: a. "And you state that Mrs. Mary Miller had assumed the payment of these debts? b. I will ask you this question: Do you remember whether or not she stated that she bought that property from Mrs. Mary Miller, or whether it was left to her to pay those debts? c. You say there were three hundred acres? d. And with the mill it was worth $11 per acre? e. And without it $7 or $8?

8. For that his honor erred in charging the following: "Looking at the circumstances here, in the light of testimony," &c. [Here follows all of the charge, down to the end of that paragraph.]

9. For that his honor erred in charging the following: "But, any way, she [Mrs. Mary Miller] made an arrangement which was satisfactory to herself, satisfactory to her creditors, and satisfactory to the heirs of the estate. There was no dissatisfaction at that time."

10. For that his honor erred in charging the following: "And if Mrs. Miller, urged by her husband or anybody else, or without being urged, thought that she would get possession and control of this property, put it on her land which her mother had deeded to her, and in order to do that, she made this note and mortgage, why, then I think she is liable, and the plaintiff ought to have a verdict."

11. For that his honor erred in charging the following: "Now, one more thing, I would say that whenever a person signs a mortgage, gives a note and signs a mortgage, and in that mortgage represents him or herself to be the owner of the property upon which they put the mortgage, then they are estopped to deny it."

12. For that his honor erred in charging the jury in this the following: "If a man should act and pretend to be the owner of a piece of property and mortgage it, and then try to get out of paying for it by saying that the property was not his, he cannot do so. Estoppel is the principle of law that does not allow a man to state the truth, and a man is allowed to state only the truth against his own debt."

13. For that his honor erred in refusing defendant's first request to charge, and also in charging the jury, that if defendant became a trustee and took possession of property charged with the payment of the debt, that she thereby became generally liable for the payment of such debt.

14. For that his honor erred in charging the jury upon the law as to the burden of proof.

*Messrs. Ragsdale & Ragsdale*, for appellant.

*Messrs. McDonald & Douglass*, contra.

March 23, 1892. The opinion of the court was delivered by

MR. CHIEF JUSTICE McIVER. This is an action on two notes alleged to have been made by the defendant in favor of the plaintiffs, and the complaint is in the ordinary form appropriate to such an action. The only defence was, that defendant is, and was at the time of the execution of the notes, a married woman, and was, therefore, incapable of making the contract evidenced thereby. To meet this defence, the plaintiffs undertook to show that the contracts sued upon were contracts as to the separate estate of the defendant, by offering testimony tending to show that defendant had received property from her mother-in-law, Mrs. Mary Miller, upon the condition that she was to pay a certain debt of her husband to the plaintiffs for the amount of which the notes were given. In the outset of the case, defendant inter-

posed an oral demurrer upon the ground that the facts stated in the complaint were not sufficient to constitute a cause of action, which being overruled by his honor, Judge Kershaw, the trial proceeded, and at the close of plaintiffs' testimony defendant moved for non-suit upon the ground that there was no testimony tending to show that the contracts sued upon were made in reference to the separate estate of the defendant. His honor ruled that where there was a scintilla of testimony, the case must go to the jury, and he therefore refused the motion, and the trial having resulted in a verdict in favor of the plaintiffs, the defendant appeals upon the fourteen grounds set out in the record, which, together with the judge's charge, should be incorporated in the report of this case.

As well as we can gather from these grounds, aided by the argument of the counsel for appellant, four errors are imputed to the Circuit Judge : 1st. In overruling the demurrer. 2nd. In receiving incompetent testimony. 3rd. In his instructions to the jury as to the matter of estoppel. 4th. In charging upon the facts.

1st. We do not think there was any error in overruling the demurrer. The ground upon which appellant seems to base the demurrer is that the action being on a contract of a married woman, the complaint was fatally defective in that it contained no allegation that the contract was made with reference to the separate estate of the married woman. In considering the validity of a demurrer like this, we can look only to the allegations in the complaint, without regard to what may appear either in the answer or the testimony ; and as it does not appear from the complaint that the defendant was a married woman, it is very obvious that there is nothing upon which the demurrer can rest. The complaint being in the ordinary form, and there being no allegation in it which would indicate that the defendant labored under any disability of any kind, it is quite clear that the facts therein stated are sufficient to constitute a cause of action. If, as a matter of fact, the defendant is a married woman, and sees fit to set up, as a defence to the action, her disability as such, then the burden of proof is thrown upon the plaintiff to rebut such defence by showing that the contract was of

35—35

such a character as she was competent to make, notwithstanding her general disability arising from coverture. But until such defence is set up, and the fact of coverture upon which it rests has been established, the plaintiff is under no obligation either to allege or prove such facts as would be necessary to meet and overcome such defence.

The 2nd general assignment of error may be subdivided into the following classes: 1st. Error in receiving testimony inadmissible under section 400 of the Code. 2nd. In receiving parol testimony to vary a written instrument. 3rd. In receiving parol testimony to establish a trust in real estate in violation of the statute of frauds. 4th. In receiving parol testimony as to what the defendant had testified on a former trial, although such testimony had been taken down in writing by the stenographer.

As to the first of these subdivisions, a brief statement will be necessary. It seems that the plaintiffs claimed that certain property, real as well as personal, had been given to the defendant by her mother-in-law, Mrs. Mary Miller, who was dead at the time of the trial, and when the plaintiff, Calvin Brice, was on the stand as a witness, and was proceeding to state what passed between him and Mrs. Mary Miller, no objection was interposed until he began to say that she had given the property to the defendant, when objection was interposed—not, however, upon the ground that such testimony was inadmissible under section 400 of the Code, but upon the ground that the evidences of such gift were in writing, and that the terms of a written instrument could not be varied by parol evidence, and the objection was sustained. Then, when the witness proceeded to state the change of the possession of the property from Mrs. Mary Miller to the defendant, and said, "Mrs. Mary Miller fixed the property so they could pay the debt," objection was interposed that such testimony was inadmissible under section 400 of the Code, and the court ruled that it would be, but that the witness was merely speaking of a change of the possession. It seems to us that if there was any error in this ruling, it was in favor of the defendant, for certainly, so far as that section of the Code was concerned, it was not incompetent for the witness to say that Mrs. Miller "fixed the property so they could pay the debt," as that

was not necessarily any transaction or communication between the witness and Mrs. Mary Miller, but was merely a statement as to what she had done.  The next objection which we find noted in the "Case" does not purport to be based upon the section of the Code above referred to, but was based upon the ground that a trust could not be created by parol, which will be considered when we reach the 3rd subdivision of this general assignment of error.

The next exception to the testimony noted in the "Case" is to the statement made by the witness, that Mrs. Mary Miller said that the debts must be paid; but as the witness had already been allowed, in a previous portion of his testimony, to make this statement without objection, the objection here came too late.

The next objection based upon section 400 of the Code, which we find noted, was when the witness was asked whether he knew how Mrs. Mary Miller (?) came into possession of the property.  It is so printed in the "Case," but we suppose it is a misprint, and that the question really was how *the defendant* came into possession of the property, for the counsel objected on the ground that the purpose of the question was to ask about a transaction between the defendant and Mrs. Mary Miller, of which plaintiffs were the beneficiaries, and the court ruled that if the witness had any interest in the transaction, he cannot prove it—really sustaining the objection.  Here, again, it seems to us that if there was any error, it was in favor of the defendant; for if the objection was to the testimony as actually printed, or as we have supposed it ought to be printed, we do not see that the question was inadmissible, as in neither event did it appear that the witness was asked as to a transaction *between such witness* and a deceased person, but as to a transaction between such deceased and another person.

The next objection noted is to the question asked the witness as to whether certain persons went to Mrs. Mary Miller's place, when the court ruled very properly that there was no objection to the witness stating where the parties went; but when the witness was asked what was the purpose in

getting the persons named to put a value on Mrs. Mary Miller's land, and objection was interposed, the question was waived.

Owing to the general terms in which many of the grounds of appeal are couched, we have been compelled thus to go over the testimony of the plaintiff, Calvin Brice, as it is set out in the "Case," with a view to ascertain the particular point of the objections based upon section 400 of the Code, and so far as we have been able to discover, there is no foundation for any such objection. In addition to this, we may remark, that, under the case of *Cantey* v. *Whitaker*, 17 S. C., 527, it is not free from doubt whether any such objection could be sustained upon another ground. It is not clear that any such relation existed between Mrs. Mary Miller and the defendant as would render it incompetent for the plaintiff to testify to a transaction or communication between himself and Mrs. Mary Miller, for while the defendant was the *alienee* of Mrs. Mary Miller, the case cited shows that it does not follow she was her assignee.

The second subdivision of this general assignment of error clearly cannot be sustained; for, in the first place, it does not appear that the alleged transfer of the *personal* property was evidenced by any written instrument, though the real estate was conveyed by a deed, a copy of which is set out in the "Case." But waiving this, the testimony objected to was not offered to vary the terms of any written instrument, but simply to show the real consideration of the alleged transfer, which is clearly admissible.

The third subdivision of this general assignment of error is based upon a misconception of the scope and purpose of the testimony objected to. It was not offered for the purpose of establishing any trust in the land; and the Circuit Judge ruled that such a trust could not be established by such evidence. On the contrary, the obvious purpose and effect of the testimony was to show that the consideration of the alleged transfer to the defendant was that she would pay the debts due to plaintiffs; that these debts were, in fact, the purchase money of the property; and surely it is not necessary now to cite authority to show that a contract of a married woman to pay the purchase

money of property which she has bought, is a contract in reference to her separate estate.

The fourth subdivision cannot be sustained. There can be no doubt that it is competent for one party to show what the other party to the action has admitted, or said, as to the subject-matter of controversy on a previous occasion, whether on a former trial or not. But the point of this particular allegation of error seems to be that, inasmuch as the testimony of the defendant at the former trial had been taken down by the stenographer in writing, that constituted the best evidence as to what her testimony had been, and, therefore, it was not competent for the plaintiff to state what the defendant had said on a former trial. We know of no rule of law which would sustain this position. While it may be true that what a witness writes down himself, or what is contained in some paper written by another and signed by himself, may be the best evidence of what the witness has said on a former occasion, it does not follow that where a third person, be he a stenographer or not, takes down in writing what a witness said, this writing is the best evidence, in such a sense, as to exclude any other. Stenographers are no more infallible than any other human beings, and while, as a rule, they may be accurate, intelligent, and honest, they are not always so, and, therefore, it will not do to lay down as a rule that the stenographer's notes, when translated by him, are the best evidence of what a witness has said, in such a sense as to exclude the testimony of an intelligent bystander, who has heard and paid particular attention to the testimony of the witness, as to what such witness may have said on a former trial. The Circuit Judge, in his comments to the jury upon this subject, went quite as far (if not too far) as it was proper to go, when he told them that the stenographer's notes would outweigh the testimony of a person who spoke from memory only.

The appellant also objects that some of the testimony was irrelevant and not in reply, and also that some of the questions propounded to the witnesses were leading questions. As to the objections based upon irrelevancy and not being in reply, it is sufficient to say that these are matters which must necessarily be left largely to the discretion of the judge be-

fore whom the case is tried; and surely there was no abuse of such discretion in this case. As to leading questions, we see no error. Those specially indicated seem to be mere repetitions of what the witness had previously stated, and this does not render the questions amenable to such objection.

The 3rd general assignment of error as to the matter of estoppel is based upon a misconception of the charge of the Circuit Judge. It appears that while the plaintiffs claimed that the personal property had been transferred by Mrs. Mary Miller to the defendant upon the consideration that she would pay the debts due to the plaintiffs, the defendant, on the other hand, insisted that though the real estate had been conveyed to her, yet the personal property had been transferred to her husband and not to her. This, therefore, was one of the issues of fact in the case, and the remarks made in the charge as to the estoppel arising from the undisputed fact, that the defendant had given the plaintiffs a mortgage on the personal property, related solely to that issue of fact, and had no reference to any estoppel that might arise from a representation made by defendant that the contracts in question were contracts in reference to her separate estate. That was not the ground upon which the plaintiffs based their claim to hold the defendant liable, but that claim was based upon the ground that the notes sued upon really represented, in part, at least, the purchase money of the property which defendant had received from Mrs. Mary Miller, and that defendant, instead of giving her notes to Mrs. Mary Miller, gave them to the plaintiffs for the debt which Mrs. Mary Miller insisted should be paid. Of course, to sustain this ground it was necessary for the plaintiffs to show that the defendant had herself, and not her husband, received the property from Mrs. Mary Miller, and the mortgage was simply relied upon as an admission that the property was hers and not her husband's; for surely it could not be denied that where a person signs a mortgage on certain property, he cannot afterwards, in a contest with the mortgagee, be permitted to deny that the property mortgaged was his.

The 4th and last general assignment of error is that the Circuit Judge violated the constitutional provision by charging upon

the facts. It seems to us that the charge itself furnishes its own best vindication. While the judge may have expressed his opinion as to such immaterial matters as the propriety and commendability of Mrs. Mary Miller's conduct in disposing of her property, we are unable to discover any instance in which he indicated any opinion as to any of the material issues of fact in the case.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.