### 6737

### STATE v. HARMON.

1. EVIDENCE—OPINION.—After stating the condition of a pistol, the
   witness may say, in his opinion, it had been recently fired. The
   exclusion of this evidence here was harmless, as the fact had been
   previously testified to in substance by this and another witness.
2. IBID.—SELF-DEFENSE.—The consciousness of having violated a hus-
   band's marital rights would not tend to show the transgressor had
   such ill will toward the husband as to induce a disposition to
   attack him.
3. IBID.—REPLY—DISCRETION.—An appellant can not urge abuse of dis-
   cretion in admission of evidence in reply unless he has exhausted his
   remedy in the Court below, by asking to be allowed to offer evidence
   in surrebuttal.
4. IBID.—CONTRADICTION—WITNESS.—Part of a conversation consisting
   of references to what the witness had heard and communicated to
   defendant may be used to contradict him in connection with the
   balance of the conversation in which an alleged threat was attributed
   to defendant.
5. CHARGE.—Even though counsel for defense did not refer in argu-
   ment to the unwritten law, it was proper for Judge to remind jury
   it was their duty not to try the case by the unwritten law, but by
   the law of the land.

Before W. H. HUNT, SPECIAL JUDGE, Abbeville, June
Term, 1907. Affirmed.

Indictment against Clinton Harmon and Bertha Harmon
for murder of R. E. Wells. From sentence on verdict of
manslaughter, defendant appeals.

*Messrs. Wm. N. Graydon* and *Frank B. Gary,* for appel-
lant. *Mr. Graydon* cites: *Admission of opinion evidence:*
55 S. C., 338. *Relations and feelings existing between de-
fendant and deceased are relevant:* Elliott on Ev., Sec. 3036;
43 S. C., 52; 37 Cal., 77; 9 Pa., 573.

*Solicitor R. A. Cooper* and *Wm. P. Green,* contra.

February 11, 1908. The opinion of the Court was delivered by

MR. JUSTICE WOODS. Under an indictment charging them with murder of R. E. Wells, the defendants were convicted of manslaughter. The defense, in substance, was that Wells had been intimate with the wife of Clinton Harmon, and when this fact was made known to Clinton Harmon, he and Bertha Harmon, his brother, sought an interview with Wells, who became the aggressor, and by attempting to shoot made it necessary for them to kill him in self-defense.

Error is alleged in the exclusion and admission of testimony and in the charge to the jury. The contention of the State is that only two shots were fired, and these by the defendants. In support of their contention, that there were three shots, one being from the pistol of Wells, counsel for defendants, after testimony from Dr. Jennings that he had made observation of such matters, asked him as to Wells' pistol: "From what you saw there, the marks on the pistol, the appearance of it, would you say it was recently fired or not?" The Court excluded the question. A sufficient foundation had been laid for the witness to testify on the point, and it was error not to allow the question, as was held in *State* v. *Davis,* 55 S. C., 339. But its exclusion can not avail defendants because Dr. Jennings had previously testified as follows: "Q. Did you examine that pistol with a view to determining whether it had been recently fired or not? A. Yes, sir; I examined that pistol and noticed that fact. The powder, as I expressed it here before—I said the smoke was still moist on the chamber and the barrel of the pistol." Certainly *the fact* which the witness said that he noted was the fact that the pistol had been recently fired. In addition to this, the witness F. F. Edmonds testified as to the pistol: "There was one blank chamber in there with no cartridge or shell, either. There was one empty shell —looked as if it had been re-

6—79

cently shot." And no evidence to the contrary appears in the record.

With a view of showing the state of feeling of the parties to each other, defendants' counsel sought to prove by Mrs. Harmon, mother of defendants, that she had seen Wells with the wife of Clinton Harmon in her room and that she had communicated this fact to Clinton before the homicide. The evidence was excluded. The consciousness of deceased of having violated another's marital rights might well produce fear and apprehension on his part, but it is not apparent how this evidence would tend to prove the deceased had such ill will towards defendants as to induce a disposition to attack them, and thus support the plea of self-defense. Be that as it may, the exclusion of the evidence could not be reversible error because the record shows that W. D. Harmon was allowed to testify to telling his son, Clinton, of his wife's infidelity with Wells, to warning Wells of his knowledge of the wrong done to him, and to advising Wells to leave. This evidence was not disputed. So that it clearly appears from the record, the jury had before them all the facts showing the condition of mind and feelings of the parties to the tragedy towards each other.

On the cross-examination of the defendant, Clinton Harmon, the solicitor asked this question: "In the conversation you had with Mr. Deason near his home in the road late Thursday afternoon, the day before the killing, didn't Mr. Deason tell you he had a conversation with your wife about what you told him before that, and that she had stated that she had never heard the name of Wells before, in connection, with reference to any illicit intercourse she had had with him, and that she had left because you and she had a quarrel about the trouble your sister had had; and didn't you tell Mr. Deason then and there that you were going to kill both of them?" The witness denied having made the statement. In reply, the solicitor, over the objection of defendants, was allowed to have the stenographer

read the question to the witness Deason and ask him, "Did he (Clinton) tell you that?" and receive an affirmative answer. It was insisted this testimony was not admissible in reply and "was an indirect way of having the witness, Deason, testify to matter that is hearsay and irrelevant."

The admission of testimony in reply is a matter that is largely in the discretion of the Circuit Judge. *Brice* v. *Miller,* 35 S. C., 537, 15 S. E., 272; *Sims* v. *Jones,* 43 S. C., 100, 20 S. E., 905. But, aside from that, a defendant can not avail himself of an error in admitting testimony in reply, even so manifest as to show abuse of discretion, unless he has exhausted his remedy in the Court below by asking to be allowed to offer rebutting testimony in his own behalf. The general rule is, that one who seeks relief in an appellate court must show that in the trial below he was deprived of a substantial right, after having exhausted all reasonable means within his reach to preserve it.

The question, though directed to a contradiction, related to an alleged conversation in which a threat was attributed to defendant, Clinton Harmon, and it was not error to allow the conversation showing the connection to be brought out, though part of it consisted of references to what the witness had heard and communicated to the defendant.

The course of counsel for defense in not appealing to the so-called unwritten law was highly commendable. But it was none the less the right and manifest duty of the Circuit Judge to warn the jury of their obligation to try the cause, not by such so-called unwritten law, but by the law of the State. If this warning was detrimental to the defendants, it could only have been so because they had taken human life in violation of the law of the land.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.