8931

STATE v. LEMACKS.

(82 S. E. 879.)

HOMICIDE.   APPEAL AND ERROR.   EVIDENCE.   CONFESSIONS.   CHARGE.
STATEMENT OF ISSUES.

1. The evidence as to the circumstances under which a homicide was
committed being conflicting, the question should be submitted to the
jury.

2. A ruling that a question, asked a prosecuting witness, father of
deceased, on cross-examination by defendant's counsel, "So then, they
were not on good terms the Thursday afternoon that I. S. Lemacks
(defendant) went to your house to see your son (deceased) about
the way he had outraged his sister?" is irrelevant and incompetent,
on a trial for murder, is not reviewable on appeal, where the answer
was subsequently admitted, and not prejudicial to defendant, who
admitted the existence of ill will between him and the deceased at
the time in question, and this was not denied by the State.

3. The admission of an alleged confession, over objection as not free
and voluntary, substantially the same as other statements of defend-
ant admitted without objection, and tending to corroborate state-
ments of defendant in Court, as to the cause leading to the com-
mission of the homicide, is not prejudicial to defendant, and will not
be reviewed on appeal.

MESSRS. JUSTICES WATTS *and* GAGE *dissent.*

4. Exclusion of testimony of a sister of defendant as to her ill treat-
ment by deceased prior to the homicide, not admissible to show
malice on part of deceased toward defendants, and tending to show
cause for ill will by defendant toward deceased, *held,* not prejudicial
to defendant on his trial for murder.

5. Where defendant indicted for murder attempted to show that he had
been moved to take the life of deceased because of an outrage com-
mitted against his sister, and counsel argued the right of a brother
to slay his sister's seducer, a charge that: "This Court has jurisdic-
tion of every crime and offense committed in this State.   No one has
a right to appeal to any other tribunal, and if a man pleads the
higher law he is guilty of murder.   I won't say if he pleads it he
is guilty of murder, but he has no right to say he took the law into
his own hands.   The higher law has not any force in South Carolina."
*Held,* by a majority of the Court, not error.

MR. JUSTICE WATTS *dissents.*

6. Where defendant contended on trial that he was moved by an out-
rage committed against his sister by deceased to kill the latter, and
did not rely upon insanity as a defense; a charge that insanity was
not pleaded as a defense, was not prejudicial to defendant; espe-

cially where the trial Judge added, that it was a question for the jury to determine whether the defendant had sense enough to know whether he was doing right or wrong.

MESSRS. JUSTICES WATTS *and* FRASER *dissent.*

7. A majority of the Court concurring in the opinion, though not in the reasons why, a new trial should be granted, it is so adjudged.

8. (By GAGE, A. J.) On a trial for murder, the jury should be fully instructed as to its power (in effect) to fix the penalty by finding, or omitting to find, a recommendation to mercy, in case the defendant is guilty of murder.

Before BOWMAN, J., Walterboro, November, 1913. Reversed.

The defendant, I. S. Lemacks, being convicted of murder, appeals. The facts and exceptions are stated in the opinion. The charge as to the form of verdict was as follows:

"If you find the prisoner guilty of murder and there are no extenuating circumstances you just say guilty and write your name under there with the word foreman, and that means that the defendant will suffer death in the electric chair, but if you find that even though you think he is guilty, something that makes you feel he ought not to suffer death, then say guilty of murder with recommendation to mercy, then the law as made by the legislature is that he shall spend the remainder of his life at hard labor on the public works of this county or in the State penitentiary, if you find that he is guilty of manslaughter, and sign your name as foreman, and that means that the Court will put punishment on him somewhere between two and thirty years in the discretion of the Judge, if you find that he has made out his plea and that he is not guilty it is as much your bounden duty to say not guilty as it is to say guilty, so write the word not guilty and sign your name as foreman.

Now, you are upon your oath to get at the truth and it is your duty to try your best to bring in a right verdict. Retire and find a verdict.

The jury returned for instructions and the foreman requested the Court to instruct them on the following point:

The Foreman: The jury wants to know if a man is found guilty of murder, absolutely clear in the jury's mind that he is guilty of murder, has a juror any right under the law and his oath taken as a juryman to recommend to mercy?

The Court: If you think he ought not to suffer death; if you think there are extenuating circumstances the law gives you the right to recommend him to mercy, that is always in the power of the jury; before 1894, if the jury recommended to mercy the Judge could not act, it was left with the Governor, but in 1894 the legislature passed a law making it life imprisonment when the jury recommended to mercy."

*Mr. D. B. Peurifoy,* for defendant-appellant, cites: *As to question asked father of deceased with reference to terms existing between the latter and defendant:* 93 S. C. 157. *As to admission of confession:* 12 Cyc. 461, 462, 469, 477; 5 Rich. 400; 1 Strob. 155; 34 Am. Dec. 674; 27 S. C. 22, 27; 36 S. C. 532; 14 S. C. 628; 1 Greenleaf Ev. 290, 302. *Second confession founded in first:* 23 Am. St. Rep. 533; 12 Cyc. 480; 5 Fla. 285; 22 Ark. 336; 111 Mass. 435; 36 Tex. 356; Wharton Crim. Ev. 677; 54 Mo. 478; 17 N. H. 171; 50 Ala. 120; 36 S. C. 532; 35 S. C. 197. Further submitted that in his argument on Circuit before the jury, "he argued a right on the part of a brother to slay his sister's seducer.

That the Judge, in stating that any one who pleads the higher law is guilty of murder was referring to the defendant. The trial Judge intimated that the defendant was relying on the higher law; and in the next breath stated that a person pleading the higher law was guilty of murder. The charge was an unsound proposition of law, for

a person may rely on the higher law, and only be guilty of manslaughter or even excusable."

*Statement as to defense of insanity a charge on the facts:* Const. 1895, art V, sec. 26.

*Mr. James E. Puerifoy, Acting Solicitor,* and *Messrs. Padgett & Moorer,* for the State, respondent. The latter cite: *Issue for jury:* 30 S. C. 74; 68 S. C. 304; 72 S. C. 194; 36 S. C. 487; 15 S. C. 153. *No abuse of discretion in admitting testimony as to confession:* 74 S. C. 477; 69 S. C. 72; 49 S. C. 550; *Ib.* 410; 74 S. C. 551; 36 S. C. 524. *Testimony of sister as to alleged assault irrelevant:* 79 S. C. 80. *Charge as to so-called higher law:* 79 S. C. 80, 83. *Insanity as defense:* 20 S. C. 441; 32 S. C. L. 479.

September 8, 1914.

The following opinion was delivered by MR. CHIEF JUSTICE GARY.

The defendant, I. S. Lemacks (generally called "Cap" Lemacks), was tried at the November term, 1913, of the Court of General Sessions for Colleton county, on an indictment charging him with the murder of Aquilla Blocker (commonly known as "Quillie" Blocker).

The jury rendered a verdict of guilty of murder, and he was sentenced to be electrocuted.

From said sentence he appealed to this Court on several exceptions, the first of which was as follows:

(1) "The presiding Judge erred in not granting defendant's motion for a new trial, there being no competent evidence to support the verdict."

This exception was not argued, but, waiving such objection, it cannot be sustained, as the defendant admitted that he had killed the deceased with a deadly weapon, and the testimony was conflicting as to the circumstances under which the homicide was committed.

Second Exception. (2) "The presiding Judge erred in sustaining the objection of the State, and ruling that the witness, T. J. Blocker, was not required to answer the following question: 'So then they were not on good terms Thursday afternoon, that I. S. Lemacks went to your house to see your son about the way he had outraged his sister?' The error assigned being that the question was perfectly competent, and a vital point in the case."

The appellant's attorney in his written argument, thus states the object of the testimony:

"The purpose of this question was to show the motive of the killing, to discredit the witness and to fix the time, when the bad feeling arose between the defendant and the deceased. The theory of the State was, that the object of the killing was robbery, while the defense was, and the burden of the testimony showed, that the defendant killed the deceased on account of an outrage on his sister. It will be seen from the testimony that the deceased, hearing defendant's sister say that she was going over to her brother's, in the afternoon, waylaid her on the road, and at the point of a pistol accomplished his purpose. Several days later, the defendant noticed that she was crying, asked her what the trouble was, and she told him that she had been insulted by Blocker. The defendant then got his shotgun, went over to Blocker's, and what transpired there will be seen from the testimony:

"Q. You all had a talk there? A. Yes, sir; I cursed him for everything I could think of. Q. Did you all adjust the difference between you? A. Yes, sir; certainly did; shook hands on it; it was never to be brought up again. Q. Did he deny that he had done anything? A. Denied it; said that he had asked an unfair question; said that was all that passed. Q. Why did he say he had insulted your sister? A. Said it was the fault of liquor, and begged to be excused, forgiven. I told him I would forgive him, my sister had denied it to me."

There are two reasons why this exception cannot be sustained. In the first place, the witness was allowed to answer the question. And, in the second place, it was admitted by the defendant, and not denied by the State, that there was bad blood between the parties, or at least ill will on the part of the defendant, towards the deceased, when he went to see Blocker on Thursday, prior to the homicide. Furthermore, such testimony would have tended to show that the appellant was guilty of murder, after the parties had adjusted their differences, in the manner just mentioned. There was also testimony to the effect that the deceased went to the home of defendant on Friday evening, after they had agreed that the matter was never to be brought up again, and invited Lemacks to go coon hunting with him next morning, which he did. When they returned from the coon hunt, they went to a neighbor's for a hog, and returned together to the home of the deceased. The deceased then started to a neighbor's to buy cattle, and the defendant went with him, for the alleged purpose of hunting his dog, which was lost in the woods. Blocker was found dead in the woods, near which the parties were last seen together.

This exception is overruled.

Third Exception. "The presiding Judge erred in permitting the witnesses, Dave Blocker and John Nettles, constables in charge of the defendant, to testify as to a confession claimed to have been made by the defendant on way to jail, the said confession not being made freely and voluntary. but made under duress and influence of hope."

His Honor, the Circuit Judge, ruled that the testimony of Dave Blocker as to confessions made to him by the appellant, in the presence of J. C. Nettles, were admissible in evidence. Afterwards, when J. C. Nettles testified as to the confession made to him by the appellant, in the presence of Dave Blocker, the presiding Judge ruled that they were incompetent. The State then proceeded to interrogate the

witness, as to confessions thereafter made by the defendant, when being brought from the penitentiary by Nettles, whereupon the Circuit Judge made the folllowing ruling:

"The Court: I understand the facts are these: That these men made certain inducements to him, and offered to help him if he would tell what happened, and the defendant did make a statement to him telling him certain things he had done; now this same defendant was afterwards sent to the penitentiary for safe-keeping, and this same constable went to bring him back. Now, on his return back, he voluntarily volunteered to tell him what he said before. Go ahead and tell it."

The witness then testified as follows:

"A. He said that he and Blocker were in the creek, and they had a scuffle and a skirmish, and the gun was off a piece lying by a tree, and they both ran for the gun, and he beat Blocker to the gun, and Blocker started to walk off about eight feet from him, and he shot him. Q. Did he say where he hit him? A. No, sir; he didn't say. I then asked Mr. Lemacks why did he kill him. He said, well, I killed him because he treated my sister like a dog. Q. That is what he told you on the way from Columbia? A. No, sir. Q. He told you that on the way to jail, and corroborated it on the way from Columbia? A. Yes, sir. Q. When did you bring him from Columbia? A. Last Sunday."

The defendant did not deny that he killed the deceased. He also introduced his sister as a witness, for the purpose of showing that he had killed Blocker on account of his conduct towards her. Furthermore, J. H. Johnson testified, without objection, as to confessions made to him by defendant, which were substantially to the same effect as those made to Blocker and Nettles.

Under such circumstances, it cannot be successfully contended that the testimony of the constable was prejudicial to the rights of the defendant, especially when we recall the

statement of appellant's counsel that "the defense was, and the burden of the testimony showed that the defendant killed the deceased on account of an outrage on his sister."

Fourth and Fifth Exceptions. 4. "The presiding Judge erred in refusing to allow the witness, Meta Lemacks, to testify how she had been treated by deceased, prior to the killing, the same being ·a material point in the case, and the cause that led up to the killing."

5. "The presiding Judge erred in refusing to allow the witness, Meta Lemacks, for the defendant, to testify as to her condition and state of mind after she had been assaulted by the deceased, the same being important to show what actuated the defendant, and what was the cause of the killing."

The only purpose for which the testimony mentioned in those exceptions was competent, was for the purpose of showing the ill feeling of the defendant against the deceased, and, this was not only amply shown by the testimony of this witness and others, but by the admissions of the defendant.

Such testimony was not admissible to show malice on the part of the *deceased* against the *appellant*. *State* v. *Harmon*, 79 S. C. 80, 60 S. E. 230.

Sixth Exception. "6. The presiding Judge erred in charging the jury as follows: 'This Court has jurisdiction of every crime and offense, committed in this State, no one has a right to appeal to any other tribunal, and if he pleads the higher law, he is guilty of murder.' The error assigned being that the same was bad law, a charge on the facts, and tantamount to saying, 'in this case the defendant has pleaded the higher law, and is therefore guilty of murder.' "

The sentence quoted in the exception is only a part of what his Honor charged in this respect. He also charged as follows:

"I heard something here in this case about the higher law, the higher law in South Carolina, the highest law in South Carolina is in this courthouse. This Court has jurisdiction of every crime and offense, committed in this State. No one has a right to appeal to any other tribunal, and if a man pleads the higher law, he is guilty of murder. I won't say if he pleads it, he is guilty of murder, but he has no right to say he took the law into his own hands. The higher law has not any force in South Carolina. I address this to all the audience here. We very often think there are circumstances when we are justified in taking the law into our own hands, and inflicting punishment. I tell you that is wrong. In this civilized country of ours, if a man commits the highest offense, we ought to bring him into this courthouse and punish him. That has nothing to do with this case. I only tell you that the laws of the State of South Carolina, ought to be enforced in this Court, and I am going to do my duty, and I believe you will do yours. I believe you are just as fearless as I am, and I am going to do my duty. You take the law as you get it from me, and the testimony as you get it from that stand."

In the case of *State* v. *Harmon,* 79 S. C. 80, 60 S. E. 230, this Court used the following language, in regard to the so-called unwritten or higher law:

"The course of counsel for defense, in not appealing to the so-called unwritten law, was highly commendable. But it was not the less the right and manifest duty of the Circuit Judge to warn the jury of their obligation to try the cause, not by such so-called unwritten law, but by the law of the State. If this warning was detrimental to the defendants, it could only have been so because they had taken human life, in violation of the law of the land."

When that part of the charge in the exception is considered in connection with the other portion which we have quoted, it will at once be seen, that the exception cannot be sustained.

We take this occasion to express in unmeasured terms our commendation of the views expressed by his Honor, the Circuit Judge, and those announced in the case of the *State* v. *Harmon, supra,* by his Honor, Mr. Justice Woods, to whom it gives us pleasure to refer, as one of the ablest and most illustrious jurists that ever adorned the bench in South Carolina.

Seventh Exception. 7. "The presiding Judge committed error in answering the following question of the foreman of the jury: 'In a case of this kind evidence of insanity, as exhibited by a man charged with a crime, would the jury be justified in having doubt as to his guilt, or not?' The error assigned being that the statement of the Circuit Judge, 'The plea of insanity was not put in as a defense,' was a charge on the facts, and prejudicial."

The record shows that the following took place: "The jury returned for instructions, and the foreman requested the Court to instruct them, on the following point:

"In a case of this kind, evidence of insanity as exhibited by a man charged with a crime, would the jury be justified in having doubt as to his guilt or not?

The Court: I cannot answer that. The plea of insanity was not properly pleaded in this case, it was not put in as a defense. I cannot help you as to that. I have nothing to do with your doubts. I have charged you as to the law of reasonable doubt. I will charge you, that if a man sets up as one of his defenses, that he was insane at the time he did the deed, the burden of proof is on him to prove that he was insane. If he was able, Mr. Foreman, to know right from wrong, that is a question for you, if he had enough sense to know whether he was doing right or wrong, he would be responsible."

While his Honor, the Circuit Judge, ruled that insanity had not been interposed as a defense, nevertheless he gave the appellant the benefit of such defense when he charged

"If he was able, Mr. Foreman, to know right from wrong, that is a question for you, if he had enough sense to know whether he was doing right or wrong, he would be responsiable." *State* v. *Bundy,* 24 S. C. 439.

The following statement in the argument of the appellant's attorney, together with that hereinbefore mentioned, shows that insanity was not relied upon as a defense: "The theory of the defense was, that the motive of the defendant in taking the life of the deceased was because he had outraged his sister."

MR. JUSTICE HYDRICK concurs in the opinion announced by the CHIEF JUSTICE.

The following opinion was announced by MR. JUSTICE WATTS:

I cannot concur in the opinion of the Chief Justice. I think the Circuit Judge was in error in permitting the witnesses, Dave Blocker and John Nettles, to testify over objection as to the alleged confession of the defendant as it was made beyond question under an inducement or reward, and confessions made and testified to by officers should always be received with caution, and the Court before receiving it should have it to be made clear that it was free and voluntary and not under duress or the party making it was uninfluenced by hope of help or reward. The Court found that the defendant was offered certain inducements by the constables, and they offered to help him if he told what happened, and upon these promises the defendant made certain statements, later he was sent to the penitentiary and was brought back by one of these constables and he repeated to him the same statement. It follows that if his first statements were made by promise to help him and was not such a free and voluntary statement as could be received as competent evidence then the same objection could be made to the last statement. The defendant

had every reason to assume that the promise to help him by the same constable held good, and that he was talking to one who was his friend and had promised to aid and assist him.

The sixth exception should be sustained. His Honor violated the plain mandate of the Constitution, which forbids the Judge to charge on the facts. The defendant had attempted to show that the deceased had outraged his sister and they had discussed it. What took place between the deceased and the defendant in the conversation that led up to the difficulty was competent. Either the State or the defendant had the right to show by words, acts or deeds the mental attitude of each other at the time of the killing, and it was competent for the defendant to show that the quarrel arose by reason of the information he had received that his sister had been assaulted and maltreated, this information was conveyed to the deceased, and it was for the jury to say whether this was true or not, and for them to determine whether the defendant maliciously killed the deceased or whether he killed him in heat and passion upon sufficient legal provocation, or acting in self-defense; and his Honor should not have used the language he did to the jury charged with trying a person charged with a capital offense. It might be all right in a charge to the grand jury. Telling the jury that anyone who plead the higher law was guilty of murder, taken in connection with the effort defendant had made to show that the ill use accorded his sister by the defendant brought about the difficulty, was highly prejudicial to the defendant and no doubt influenced the jury. The Constitution of 1895 in respect to the power and duty of the Judge in charging juries is quite different from the Constitution of 1868, and was clearly understood by the bench and bar and people as intended to leave the jury sole judges of the facts uninfluenced by the Court, and it would be a safe practice for the Court to declare the law in a plain, short way.

The seventh exception should be sustained. When the defendant put in the plea of "not guilty" that carried with it all defenses, and he could have put in the plea of insanity, if he saw fit, and have introduced evidence as to his mental condition. But if he was insane at the time of the trial or became insane after trial commenced, the jury could have taken that into consideration. The Judge in answer to question of the foreman took from the jury that question, because he had not plead insanity. The question itself shows that the jury had some doubts as to his sanity, and by the action of the Judge the defendant was deprived of the right of the jury to consider that question. This alone, in my opinion, should require the verdict to be set aside, as it deprived the defendant of a substantial right and was highly prejudicial. I think that the judgment should be reversed and a new trial granted.

A majority of the Court being of opinion that a new trial should be granted, it is the judgment of the Court that the judgment be reversed and a new trial granted.

MR. JUSTICE FRASER, *concurring.* I concur with the Chief Justice in all except the seventh exception. As to the seventh exception, I concur with MR. JUSTICE WATTS.

MR. JUSTICE GAGE, *concurring.* I am of the opinion a new trial should be granted: (1) Because the defendant's confession was involuntary, and (2) because the jury was not fully instructed about its full power (in effect) to fix the penalty,—a matter which gave the jury very grave concern.